IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| DEBRA MOORE, | ) |
|       Plaintiff, | ) Case No. 4:04CV00062 |
| v. | ) **MEMORANDUM OPINION** |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security, | ) By: Jackson L. Kiser |
| | )     Senior United States District Judge |
|       Defendant. | ) |

Before me is the Report and Recommendation of the United States Magistrate Judge recommending reversing the Commissioner's final decision denying the Plaintiff's claim for benefits. The Defendant filed objections to the Report and Recommendation. I reviewed the Magistrate Judge's Report and Recommendation, the Defendant's objections, the Plaintiff's response, and relevant portions of the Record. The matter is now ripe for decision. For the reasons stated below, I **REJECT** the Magistrate Judge's recommendation and **SUSTAIN** the Defendant's objections. The Commissioner's final decision denying the Plaintiff's claim for benefits is **AFFIRMED**, and the case is hereby **DISMISSED.**

## STATEMENT OF FACTS

Plaintiff Debra Moore ("Plaintiff") is a 41 year-old high school graduate who finished one year of college and has prior work experience as a developmental aide, waitress, and food service worker. R. 25, 30. Plaintiff maintains that she is entitled to disability benefits because of injuries to her neck and right arm which, in turn, caused numbness in the fingers of her right hand. These problems originated from a work injury she suffered on May 29, 2000 when her

1

arm was pulled while trying to help one of her clients. R. 117.

Plaintiff began seeing Dr. Alan Rose on May 30, 2000 to attempt to remedy her injury. She underwent physical therapy and Dr. Rose prescribed Vicodan and Norflex for her injuries but neither the therapy nor the pills provided her sufficient relief. R. 117. On June 26, 2000, Plaintiff met with orthopedic surgeon Dr. Wittaya Payackapan who diagnosed her injury as a cervical sprain, right cervical radiculitis, and a possible herniated disc. R. 70. Dr. Payackapan recommended massage therapy, physical therapy, stretching exercises, and a neurological consultation. *Id*.

Plaintiff saw Dr. Jonathan C. Winnick for her neurological consultation on July 24, 2000 and had follow-up visits with him on September 11, 2000 and November 21, 2000. R. 78-80. In Plaintiff's final appointment with Dr. Winnick, he found that she had a "slightly diminished range of motion" in her neck, tenderness, and some numbness in her right arm and thumb. R. 78.

On September 10, 2001, Plaintiff began seeing physiatrists Dr. Robert L. Hecht, Dr. Jonathan Levin, and orthopedic surgeon Dr. John W. Shimkus. R. 133-34. They, too, observed tenderness and limited range of motion in both her cervical spine and right shoulder. R. 125-34. These visits continued on a monthly basis through April 1, 2002. These doctors also diagnosed Plaintiff's injury as a possible right cervical radiculopathy and recommended physical therapy. R. 126. At Plaintiff's last visit on April 1, 2002, Dr. Hecht noted that she had "tenderness in the cervical spine" but also had "full active range of motion in bilateral shoulders, elbows, and wrists...sensation is in tact." R. 125.

The final specialist Plaintiff saw was Dr. Samir Dutta on April 6, 2001. R. 103. Dr. Dutta is an orthopedic surgeon whom Plaintiff saw at the request of the Social Security

2

Administration. Dr. Dutta noted tenderness in Plaintiff's cervical spine and a limited range of motion and, like Dr. Hecht, noted a full range of bilateral motion with no muscle atrophy or sensory abnormality from her shoulders to her fingers. R. 104.

While seeing these specialists, Plaintiff continued to see Dr. Rose on a monthly basis through February, 2002. R. 117-22. On June 17, 2002, Dr. Rose prepared a "Medical Assessment of Ability to do Work-Related Activities (Physical)" for Plaintiff. R. 115-16. In Dr. Rose's assessment, he believed that over the course of an eight hour workday, Plaintiff could stand/walk for two hours without interruption, could sit for three hours without interruption, and could lift/carry 15 pounds. R. 116. She could also climb, crouch and kneel for two hours and stoop and crawl for one hour over the course of a work day. Dr. Rose determined that her ability to reach, feel, and handle were not affected in any way. *Id*.

On February 20, 2001, Plaintiff filed for disability payments. R. 43-45. The Social Security Commissioner ("Commissioner") denied her claim on May 3, 2001, and she filed a request for a hearing before an Administrative Law Judge ("ALJ"). R. 34-37. The ALJ denied her claim on August 20, 2002. R. 17-22. The Appeals Council denied review and adopted the ALJ's Report as the final decision of the Commissioner. R. 6-8. The Plaintiff timely filed an appeal to this Court and the Magistrate Judge filed a Report recommending reversal of the Commissioner's decision and remand to the Commissioner for further proceedings.

## ANALYSIS

**I.   Standard of Review**

Congress has limited judicial review of decisions by the Social Security Commissioner. I

3

Case 4:04-cv-00062-JLK-BWC   Document 11   Filed 10/28/05   Page 3 of 10   Pageid#: 37

am required to uphold the decision where: (1) the Commissioner's factual findings are supported by substantial evidence; and (2) the Commissioner applied the proper legal standard. 42 U.S.C. § 405(g); *see also Craig v. Chater,* 76 F.3d 585 (4th Cir. 1996). The Fourth Circuit has long defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In other words, the substantial evidence standard is satisfied by providing more than a scintilla but less than a preponderance of the evidence. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

The Commissioner is charged with evaluating the medical evidence, assessing symptoms, signs, and findings to determine the functional capacity of the claimant. 20 C.F.R. §§ 404.1527-404.1545; *Hays v. Sullivan*, 907 F.2d 1453 (1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The Regulations grant the Commissioner latitude in resolving factual inconsistencies and I may only review the ALJ's factual determinations for clear error. 20 C.F.R. §§ 404.1527 and 416.927. If the ALJ's resolution of the conflicts in the evidence is supported by substantial evidence, then I must affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966).

## II. The Social Security Act

It is well established that disability determinations are governed by the provisions of 20 C.F.R. § 404.1520 (2003). Under the five-step evaluation procedure the ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful employment; (2) if not, whether she has a severe impairment based upon medical evidence; (3) if so, whether that impairment meets or equals the medical criteria of Appendix 1 of 20 CFR § 404 subpart P which

4

warrants a finding of disability without considering vocational factors; and (4) if the impairment does not meet the medical criteria, whether the impairment prevents her from performing her past relevant work; and (5) if so, whether other work exists in significant numbers in the national economy that accommodate her residual functional capacity and vocational factors. *See Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). The burdens of proof and production remain with the claimant through the fourth step; however, if the claimant successfully reaches step five, then the burden of production shifts to the Commissioner to show that other jobs exist in the national economy that the claimant can perform. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); *Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir. 1975). A more detailed discussion of the Commissioner's burden will be discussed in Part III-A below.

## III. The Magistrate's Report and Recommendation

The Magistrate Judge found good cause in the Record to remand this case for further proceedings. The Magistrate Judge found that, contrary to the ALJ's decision, "plaintiff has suffered non-exertional limitations on her work-related abilities" such that the Commissioner failed to carry her burden "at the final level of the sequential evaluation" (Report & Recommendation, p. 4). Because the Magistrate Judge found that Plaintiff suffers from non-exertional limitations, he recommended remanding the case to the Commissioner "to fully and fairly address the non-exertional elements of the plaintiff's claim including the necessity for vocational evidence" (Report & Recommendation, p. 6).

### A. THE COMMISSIONER'S BURDEN

The Magistrate Judge correctly recognized the five-step disability evaluation procedure mandated by 20 C.F.R. § 404.1520. However, the Magistrate Judge misstated the burden that

5

was placed on the Commissioner once Plaintiff satisfied her prima facie case under the Regulations. In his Report & Recommendation, the Magistrate Judge stated that once Plaintiff showed that her impairment prevented her from performing past relevant work, "the burden shifted to the Commissioner to demonstrate both the plaintiff's residual functional capacity and that gainful work was available to her in significant numbers in the national economy" given her injuries, age, education, skill level, and work experience. (Report & Recommendation, pp. 2-3).

The Magistrate Judge's characterization suggests that the Commissioner has both the burdens of production and persuasion at step five. This is inaccurate. The Fourth Circuit has long held that once a plaintiff establishes a prima facie case, only the "burden of going forward" shifts to the Commissioner. *Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir. 1975). The "burden of going forward" is synonymous with the "burden of production" but is a separate concept from the "burden of persuasion." BLACK'S LAW DICTIONARY 209 (8th ed. 2004).

Moreover, the Fourth Circuit has also made clear that the Commissioner's burden of production is not as wide as the Magistrate Judge's Report and Recommendation suggests. The Commissioner's burden of production is limited to showing that "the claimant, considering his age, his education, his work experience, his skills and his physical shortcomings, has the capacity to perform an alternative job...shown to exist in the national economy." *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976). *See also*, *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002).

In addition to this requirement, the Magistrate Judge also stated that the Commissioner had the burden of "demonstrat[ing]...the plaintiff's residual functional capacity." (Report & Recommendation, p. 2). Even if the Magistrate Judge's statement merely referred to the burden

6

of production, it still asks for more than the law requires of the Commissioner. The Commissioner's sole burden was to produce evidence that this particular Plaintiff had the capacity to perform another job which exists in significant numbers in the national economy. Thus, the Commissioner's burden was satisfied when she produced the appropriate Medical-Vocational Guidelines as evidence that such jobs existed in the national economy for Plaintiff. R. 21-22. By overstating the Commissioner's burdens, the Magistrate Judge committed error and I must reject his Report and Recommendation.

### B. PLAINTIFF'S NON-EXERTIONAL LIMITATIONS

In a disability benefits proceeding, 42 U.S.C. § 405(g) mandates that the ALJ's findings "as to any fact, if supported by substantial evidence, shall be conclusive." Judicial review of the facts in a disability benefits proceeding is thus "limited to determining whether the findings are supported by substantial evidence." *Walls v. Barnhart*, 296 F.3d at 290. It is improper for any court to "'re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of' the agency." *Id*. (citing *Mastro v. Apfel*, 270 F.3d at 176; *Craig v. Chater,* 76 F.3d at 589) (alteration in original). In this case, the Magistrate Judge has re-weighed the evidence and substituted his judgment for that of the agency's by determining that Plaintiff suffered from non-exertional limitations on her ability to work.

The ALJ did not find that Plaintiff suffered from any non-exertional limitations on her ability to work. To the contrary, the ALJ found that Plaintiff's subjective assertions of pain were outweighed by other conflicting medical evidence. R. 21. The ALJ went on to conclude that Plaintiff's "assertions of incapacitating symptomatology [were] not entirely credible" because she "remained capable of, and performed activities consistent with, the requirements of at least

7

sedentary work." *Id*.

Based on these findings, it was therefore appropriate for the ALJ to rely on the Medical-Vocational Guidelines provided by the Commissioner to show that there were other jobs in the national economy that Plaintiff could perform. These Guidelines may be treated as conclusive when a plaintiff has no non-exertional limitations such as "pain, loss of hearing, loss of manual dexterity, postural limitations and pulmonary impairment." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987). (citing *Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983)). But when the plaintiff does have non-exertional limitations, the Commissioner must produce vocational evidence and may not simply rely on the Guidelines. *Coffman*, 829 F.2d at 518; *McLain v. Schweiker*, 715 F.2d 866, 869-70 (4th Cir. 1983).

In stark contrast to the ALJ, the Magistrate Judge found that Plaintiff has non-exertional limitations - pain - and, as such, should have been given the benefit of a vocational expert. The Magistrate Judge's conclusion goes directly against the specifically enumerated findings of the ALJ discussed above. Furthermore, two facts relied upon by the Magistrate Judge in forming his conclusion have either been taken out of context or cannot be found in the Record at all.

First, the Magistrate Judge stated that the ALJ found that "plaintiff suffers constant pain in her right upper extremity...which is an impairment that is [sic] likely causes pain regardless of exertion and limits plaintiff's functional ability." (Report & Recommendation, p. 3) (citing pp. 20-21 of the Record). A careful review of pages 20 and 21 of the Record, however, shows no support for the Magistrate Judge's assertion. On page 18, the ALJ did state that some of Plaintiff's doctors found that she had a "decreased pain sensation along...the upper right extremity." But in the "Findings" section of his Report, the ALJ specifically found that after

8

weighing all the evidence, Plaintiff's "severe neck pain" did not rise to the level "of any impairment" listed in the Regulations. R. 21. As discussed in the 'Statement of Facts," above, there was substantial evidence in the Record to support the ALJ's finding and it was error for the Magistrate Judge to disturb it.

Second, the Magistrate Judge stated that the ALJ found that Plaintiff's "severe neck pain...could limit the sedentary jobs she would be able to perform" (Report & Recommendation, p. 4) (citing R. 20, 21). This conclusion seems to have been taken out of context. Rather than implying that Plaintiff would have trouble finding an alternative job because of her neck pain, the ALJ specifically found that although Plaintiff's "slight *exertional* limitations...could place a *slight limit* on the jobs she could perform,...she could perform a wide range of sedentary work." R. 20 (emphasis added). Two conclusions follow from the ALJ's finding: (1) Plaintiff's ability to find other work was limited by her exertional limitations, not her non-exertional limitations; and (2) Plaintiff's ability to find other work was only slightly restricted by those limitations. Slight restrictions on alternative jobs are acceptable so long as work still exists "in significant numbers" in the national economy. There is no suggestion anywhere in the Record that significant numbers of jobs are not available to Plaintiff despite the "slight" restrictions on available work that her exertional limitations have caused.

These two bases from which the Magistrate Judge found that Plaintiff suffered from non-exertional limitations cannot be supported by a fair reading of the ALJ's Report which is itself supported by substantial evidence found in the reports and diagnoses of all the doctors Plaintiff saw, as discussed above. In re-weighing the evidence and substituting his judgment for that of the agency, the Magistrate Judge committed clear error. As such, good cause does not exist to

9

remand the case for further proceedings and the case should be dismissed.

## CONCLUSION

For reasons stated herein, I **REJECT** the Magistrate Judge's Recommendation and **SUSTAIN** the Defendant's objections. The Commissioner's final decision denying the Plaintiff's claim for benefits is **AFFIRMED**, and the case is hereby **DISMISSED.**

Entered this 28th day of October, 2005.

s/ Jackson L. Kiser<br>
Senior United States District Judge